## WILLIAMS v. MOWER.

1. RES JUDICATA.—Where a matter has been passed upon on Circuit and an exception thereto overruled by the Supreme Court, a succeeding Circuit Judge may properly hold that this matter has been decided by the Supreme Court, and is no longer open for consideration.

2. CASE CRITICISED.—It was held in this case on its first appeal (29 S. C., 332), that the sum of $5,000 had been omitted from the inventory of testator's estate, and the only point left open for further. determination on Circuit was whether the plaintiff had wilfully or intentionally concurred in such omission.

3. FINDINGS OF FACT by the Circuit Judge, based upon. reported testimony in part, and in part on testimony given in his presence, sustained.

4. EXCEPTION charging error in a matter not ruled upon by the judge, overruled.

5. APPEAL FROM PROBATE COURT—RES JUDICATA.—The Circuit Judge properly remanded this case to the Probate Court for final determination, as it had originated in that court, and had been ordered back to that court by a former Circuit decree, which, on appeal, was affirmed in this particular.

6. EVIDENCE—THE CODE, SECTION 400, does not prohibit the plaintiff from testifying to the fact that he had had conversations with defendant's intestate as to a certain matter, and when, where, and in whose presence such conversation was had, the statements of witness or of deceased not being disclosed.

Before WALLACE, J., Newberry, November, 1890.

In this case Hon. James Aldrich, judge of the Second Judicial Circuit, sat in the place of Mr. Justice Pope, who had been of counsel in the cause. It was an action by R. G. Williams, as surviving executor of John H. Williams, against G. S. Mower, as administrator of the estate of James W. Williams, deceased. The opinion states the case.

*Messrs. Jones & Jones,* for appellant.

*Messrs. Moorman & Simpkins,* contra.

February 1, 1892. The opinion of the court was delivered by MR. JUSTICE ALDRICH. This case was heard before this

court upon an appeal from a final decree (29 S. C., 332, *et seq.*), and the judgment of this court was, "that the judgment of the Circuit Court be reversed, in so far as it holds the estate of defendant's intestate liable for the five thousand dollars in addition to the inventory, and that the question of such liability be referred back to the Circuit Court for trial upon the principles herein announced, and that in all other respects the judgment of the Circuit Court be affirmed." The trial above directed has been had, the final decree of the Circuit Court rendered, and the said decree, with the exceptions thereto, are now before this court.

It is not necessary to state the history of this litigation, further than to refer to the report thereof in the 29 S. C., 332, *et seq.*, and to briefly allude to certain portions of the same. John H. Williams, testator, died on June 2d, 1876, leaving in full force his last will. By his will, after some pecuniary legacies and a specific devise to his grandchildren, he gave the larger portion of his estate to his two sons, Robert G. Williams and James W. Williams. Testator appointed these two sons executors of his said will, who, after qualifying, made and returned into the proper office in August, 1876, an inventory and appraisement of the personal estate of their testator. On August 9th, 1883, "after the greater portion of the testator's estate had been disposed of according to the directions of the will," James W. Williams died intestate, and the defendant, George S. Mower, administered upon his personal estate. The first item on the inventory and appraisement, as returned by the executors, was "cash on hand, United States bonds, railroad stocks, $8,000." Plaintiff claimed that James W. Williams, as executor, had received the sum of $5,000 in cash assets of the estate of the testator, which he had not included in the inventory and appraisement, and that the estate of said James W. Williams was due to him as surviving executor and legatee that amount, and this action was brought to settle this question and others with which we have no concern, and hence it is unnecessary to refer to same.

The Probate Court of Newberry County decided this issue in favor of plaintiff. An appeal was taken to the Circuit Court. Upon the hearing of the appeal this issue, with others, was sub-

mitted to a jury, viz., "Whether James W. Williams received five thousand dollars, or any other sum of money, from the estate of the said John H. Williams, deceased, with which he has not charged himself?" The jury answered "Yes; five thousand dollars." The presiding judge concurred in said finding and made a final decree in accordance therewith. We have stated the judgment of this court. The principles upon which the case was to be tried are found upon page 341 (29 S. C.), viz.: "If, when the inventory was made and returned by these two executors, the plaintiff either wilfully or intentionally suppressed and omitted therefrom the five thousand dollars alleged to be in the hands of his co-executor as a part of the assets of his testator's estate, or if he silently acquiesced in such suppression or omission, then, it seems to us, that upon the highest considerations of public policy and morality, the law will not permit him now, for his own advantage, to supply such omission. If this was done by these executors, it was a fraud upon the rights and interests of those whose interests were committed to their charge, and neither one of them can make such fraud the basis of any claim against the other, but the law will leave them as it found them. When they qualified as executors, it became their duty, their sworn duty, to make a full and complete inventory of the personal estate of their testator, and if they wilfully, or even intentionally, omitted from such inventory any portion of the assets of the testator, they violated their oath, and neither one of them can be permitted to claim the interposition of a court of justice to relieve them from the position in which they have voluntarily placed themselves. It is true that this may practically enure to the benefit of one who has also participated in the fraud, but this is the result in every case where one seeks relief from a fraud in which he has himself participated. The law affords relief to neither, but simply refuses its aid to both."

Again, on page 342: "Now, as this question, which seems to be the vital and controlling question, at least so far as the five thousand dollars, with which it is proposed to charge the estate of the intestate, is concerned, does not seem to have been considered and determined in the court below, the case must go back for its decision." Page 343: "It may be possible that in this par-

ticular case no harm was intended, and that none has resulted from the omission, but the law must proceed upon general principles, which are alike applicable to every similar case, and we think the safest and best principle to lay down is, that where an executor wilfully or intentionally omits from the inventory of his testator's estate any portion of the assets of such estate, he cannot afterwards, for his own advantage, supply such omission by falsifying his sworn return. Whether this has been done in this case is the question which must be referred to the Circuit Court for trial."

R. C. Williams, called as a witness for the plaintiff, against the objection of defendant, was allowed upon the trial to testify as follows : "Did you ever have any conversation with your brother, James W. Williams, about the omission of the $5,000 from the inventory ? A. Yes, sir." The "Case" does not show that the questions propounded to, and answered by, this witness immediately following the question and answer above stated, were objected to by defendant; but as both plaintiff and defendant seem, in their arguments, to consider that the objection of defendant was applicable to the questions and answers which followed, it may be proper to state the same. "Q. You had ? A. Yes, sir; several times. Q. About what time do you remember to have had the first conversation with him about the omission of the $5,000 ? A. It was several months; some time after that. Q. You think it was at least several months after the inventory ? A. Yes, sir. Q. Where did these conversations take place ? A. At my home—my father's old homestead place—in the dining room—sitting room. He was there living with me, while he was living. Q. The fact has been established that you were living together there. Were any persons present when any of these conversations took place ? Any other persons ? A. Yes, sir ; my wife and an old gentleman staying there with me on my place were there, and very often heard him and myself talking. Q. Who were the persons ? A. My wife and Mr. Rabb were present at some of the conversations."

The following is the decree of Judge Wallace, the presiding judge of the Circuit Court:

"The Supreme Court has referred back to this court for trial

14—35

the question as to whether the estate of the defendant's intestate is liable for the five thousand dollars claimed to have been omitted from the inventory of the personal estate of John H. Williams, and to that end to determine the fact whether or not the plaintiff wilfully or intentionally participated or acquiesced in the omitting of it therefrom. At the trial of this question it was agreed that all the testimony, both that heretofore taken in the Probate Court and that taken in this court, be considered, except such as has been held incompetent by the Supreme Court, and such other as may be legally objected to ; and it was further agreed that any additional testimony on the same issue might be offered as either party desired.

"Now, after arguments and consideration of all such testimony I find, as a fact, that the five thousand dollars in question was omitted from the inventory without the knowledge, intention, or acquiescence of the plaintiff, and, therefore, I do adjudge and decree that the estate of the defendant's intestate is liable therefor as a part of the assets of the estate of John H. Williams, deceased, received by him. It is further adjudged that this case be, and is hereby, remanded to the Probate Court for final settlement in accordance with the decree of Judge Norton herein and the decree of the Supreme Court and this decree. It is further adjudged that the question as to the existence and omission of the five thousand dollars, said to have been in the hands of J. W. Williams, was decided by the Supreme Court, and is not, therefore, now open for the consideration in this court."

Defendant's first exception is : "1. Because it is respectfully submitted that the Circuit Judge, the Hon. W. H. Wallace, erred at the trial before him in holding that the existence of $5,000, which was not included in the inventory filed by James W. and Robert G. Williams as the executors of the last will of John Hopkins Williams, deceased, was decided in the affirmative by the judgment of the Supreme Court rendered on the first appeal herein." This exception, in our view, is more technical than substantial. Judge Wallace did decide that "the existence and omission of the five thousand dollars, said to have been in the hands of J. W. Williams, was decided by the Supreme Court, and is not, therefore, now open for the considera-

tion in this court." He did not mean that the Supreme Court had decided these questions as original issues; because Judge Norton had already tried and determined the same, and they were brought before the Supreme Court upon exceptions taken to the final decree of Judge Norton. Said exceptions were overruled, the conclusions of Judge Norton affirmed, and, to that extent, the Supreme Court did decide these questions. This is what Judge Wallace meant when he said the question had been "decided by the Supreme Court."

Did Judge Norton decide these issues, and was his decision affirmed by the Supreme Court? It is clear that he did. His decree is full and explicit upon these points. The judgment of the Supreme Court affirmed the judgment of the Circuit Court in all respects, except "in so far as it holds the estate of defendant's intestate liable for the five thousand dollars in addition to the inventory, and that the question of such liability be referred back to the Circuit Court for trial upon the principles herein announced." The principles upon which the case was sent back for a new trial are stated in the previous decree (29 S. C., 343): "The best principle to lay down is that where an executor wilfully or intentionally omits from the inventory of his testator's estate any portion of the assets of such estate, he cannot afterwards, for his own advantage, supply such omission by falsifying his sworn return. Whether this has been done in this case is the question which must be referred to the Circuit Court for trial." On page 342: "Now, as this question, which seems to us the vital and controlling question, at least so far as the five thousand dollars, with which it is proposed to charge the estate of the intestate, is concerned, does not seem to have been considered and determined in the court below, the case must go back for its decision."

The fact that James W. Williams received $5,000, assets of the estate of John H. Williams, testator, and the further fact that said sum was not included in the inventory of said estate had been established by the judgment of the Probate Court, the finding of a jury, and the final decree of Judge Norton, affirmed by this court. Defendant's exception is overruled.

The next two exceptions are: "2. Because the preponderance

of the testimony in this action does not sustain the finding that $5,000 was omitted from the inventory of the estate of John Hopkins Williams, deceased, by the two executors of his will, namely, James W. Williams and Robert G. Williams, as such executors. 3. Because his honor, Judge Wallace, erred in finding in his decree that it was established that $5,000 was not omitted from the inventory of the estate of John Hopkins Williams, deceased, by Robert G. Williams, as executor thereof and respondent herein, by design, knowledge, or intent, or that he acquiesced in such omission." The second exception is overruled for the reason stated in the consideration of exception 1, and what is hereinafter said. Exception 3 is very broad in its terms, and refers to the facts. Judge Wallace heard the witnesses, and passed upon the evidence in the case. His conclusions are not without support, nor against the weight of the testimony, and, under the established rules in such cases, must be sustained. Exception 3 is overruled.

"4. Because his honor, the presiding judge, erred in adjudging that the estate of James W. Williams was liable to pay to the plaintiff one-half of the sum of $5,000 and the interest thereon." As Judge Wallace's decree contains no ruling, as indicated by exception 4, we do not see the force of the exception. In a colloquy between the judge and one of the counsel in the case, growing out of the objection to the competency of certain testimony, some reference was made to the fact that if plaintiff gained this case, half of the $5,000 would belong to him; but the judge did not decide that question. There was no such question in the case heard by him, and the exception is overruled.

"5. Because his honor, the presiding judge, erred in adjudging by his said decree that the action should be remanded to the Probate Court for Newberry for trial therein of the action upon the principles announced in said decree and that of the Supreme Court." Judge Norton's decree remanded the case to the Probate Court and the judgment of the Supreme Court affirmed his decree in that respect. That portion of the decree was not questioned. The case began in the Probate Court, and reached the Circuit Court upon an appeal. The questions

raised by such appeal having been decided, and the accounting still open in the Probate Court, it was necessary and proper to remand the case to that court for final determination. This exception is overruled.

"6. Because it is respectfully submitted that his honor, Judge W. H. Wallace, should have adjudged and decreed that the estate of James W. Williams, deceased, was in no way responsible to the plaintiff, respondent, for the $5,000 in controversy." This exception is overruled for reasons already fully stated.

"7. Because his honor erred in admitting the testimony of Robert G. Williams." Robert G. Williams was allowed to testify to the facts that he had had conversations with James W. Williams about the omission of the $5,000 from the inventory, and to state when, where, and in whose presence these conversations were had ; but he was not allowed to state what was said in such conversations. This is objected to under section 400, of the Code, "No party to the action * * * shall be examined in regard to any transactions or communications between such witness and a person at the time of such examination deceased," &c. In *Richards* v. *Munro* (30 S. C., 288), it is held, that this section did not prevent such party from testifying to the fact "that he had had repeated conversations with the deceased," because he "did not undertake to detail any conversation or to give an account of any transaction had by him with the deceased." This exception is overruled.

It is unnecessary to consider the exceptions of the plaintiff.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.